UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHIKA E. UGBAJA,

    Plaintiff,

    v.

ROBERT A. MCDONALD,

    Defendant.

_____/

No. C 14-3410 PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Defendant's motion to dismiss came on for hearing before this court on April 8, 2015. Plaintiff Chika Ugbaja ("plaintiff") appeared in pro per. Defendant Robert A. McDonald ("defendant") appeared through his counsel, Warren Metlitzky. Having read the papers filed in conjunction with the motion and carefully considered the arguments and relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendant's motion to dismiss as follows.

In the operative first amended complaint ("FAC"), plaintiff asserts five causes of action in connection with her employment at the San Francisco Veterans Medical Center: (1) discrimination (failure to promote) based on race/national origin, under Title VII; (2) hostile work environment based on race and gender, under Title VII; (3) discrimination (failure to promote) based on age, under the Age Discrimination in Employment Act ("ADEA"); (4) retaliation, under Title VII; and (5) hostile work environment based on race, under Title VII. Defendant moves to dismiss the entire FAC, arguing that claims (1), (2), (3), and (5) are barred based on plaintiff's failure to timely exhaust her administrative remedies, and that claims (2), (4), and (5) fail to state a claim.

Plaintiff's claims generally fall into three categories. First, claims (1) and (3) both

arise out of allegations that defendant discriminated against plaintiff by failing to promote her.  Second, claims (2) and (5) both arise out of allegations of a hostile work environment. And finally, claim (4) is based on the allegation that plaintiff was unlawfully retaliated against.

A.     Legal Standard

      1.     Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject matter jurisdiction.  See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).

Subject matter jurisdiction is fundamental and cannot be waived.  Billingsly v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.  Id.; see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and the court may look beyond the pleadings to decide the motion and may resolve factual disputes.  See St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.1989).

      2.     Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

B.  Legal Analysis

   1.  "Failure to promote" claims

As mentioned above, plaintiff asserts two claims based on defendant's failure to promote her – one alleging discrimination based on race (under Title VII) and one alleging discrimination based on age (under the ADEA). Both claims require exhaustion of administrative remedies before filing suit. See Sommatino v. United States, 255 F.3d 704, 707-08 (9th Cir. 2001); Whitman v. Mineta, 541 F.3d 929, 932 (9th Cir. 2008). Under either statute, a federal employee must notify an Equal Employment Opportunity ("EEO") counselor within 45 days of the alleged discriminatory conduct in order to satisfy the exhaustion requirement.[1] See Kraus v. Presidio Trust Facilities Division/Residential Management Branch, 572 F.3d 1039, 1043 (9th Cir. 2009); Whitman, 541 F.3d at 932. Exhaustion of administrative remedies is necessary to establish subject matter jurisdiction. B.K.B. v. Maui Police Department, 276 F.3d 1091, 1099 (9th Cir. 2002).

Defendant argues, and plaintiff does not dispute, that plaintiff's first contact with an EEO counselor was on February 16, 2012. Defendant thus argues that any conduct more than 45 days before that date (i.e., before January 2, 2012) is time-barred. Defendant

---

[1] The ADEA actually provides two alternative avenues for seeking relief, only one of which is subject to the 45-day requirement to notify an EEO counselor. Whitman, 541 F.3d at 932. Because plaintiff invoked the administrative claims process, she is subject to that 45-day requirement.

3

1 further submits a declaration stating that all of the non-promotions alleged in the complaint
2 occurred before January 2, 2012. See Dkt. 28, ¶¶ 4-8.

3       In her opposition, plaintiff does not dispute that the 45-day limit may bar her claims,
4 but offers two reasons why the 45-day period should be equitably tolled. See Sommatino,
5 255 F.3d at 710 (holding that equitable tolling can apply to administrative exhaustion
6 requirements). First, she argues that she was not aware of the requirement to contact an
7 EEO counselor within 45 days; and second, she argues that she was not actually made
8 aware of the non-promotions, as defendant "never notified [her] why she was not selected
9 for the jobs she interviewed for, who were selected and why."

10       Defendant responds to the first argument by pointing to plaintiff's EEO training
11 records, which indicate that plaintiff received training on the EEO complaint process twice
12 in 2009[2]. See Dkt. 43, Ex. 1. Defendant also contends that plaintiff received a handout on
13 EEO complaint procedures when she was hired, and submits a copy of the handout. See
14 Dkt. 43, Ex. 2.

15       The court finds that, even if plaintiff did not have actual knowledge of the 45-day
16 requirement, the records submitted by defendant show that she had constructive
17 knowledge, which is sufficient under the law of this circuit. See, e.g., Johnson v.
18 Henderson, 314 F.3d 409, 415 (9th Cir. 2002). A strict requirement of actual knowledge
19 would allow any plaintiff to avoid the exhaustion requirement by simply claiming that he or
20 she did not read the relevant training materials. Thus, plaintiff's first argument for equitable
21 tolling is rejected.

22       As to plaintiff's second tolling argument, defendant responds that "there is no
23 evidence that plaintiff ever asked" if others had been hired for the positions that she applied
24 for, nor is there evidence that plaintiff "engaged in even the most basic diligence required to
25 establish equitable tolling." While defendant may be correct that plaintiff was not diligent in

---

[2] Defendant's reply brief also states that plaintiff received additional EEO-related training in 2010, but neither the reply declaration of Lynn Hart nor the attached exhibits make reference to any EEO training in 2010.

4

seeking information regarding the non-promotions, the court finds that whether plaintiff's constructive knowledge can be imputed or whether plaintiff was sufficiently diligent are factual matters that cannot be resolved on the limited evidentiary record currently before the court.

Although plaintiff has not offered a signed declaration regarding her lack of knowledge of the non-promotions, she does affirm in her signed opposition brief that she "sworn that the contents of her complaint are true," and in turn, the FAC alleges that plaintiff was "denied [] the knowledge of this promotion until much later as plaintiff was searching through her electronic employment records and found out that her promotion was denied without her knowledge and an opportunity to appeal the denial." FAC at 3. While the court does not consider this allegation to be dispositive on the issue of equitable tolling, it notes that defendant has provided nothing more than attorney argument regarding plaintiff's lack of knowledge or lack of diligence regarding the non-promotions. Thus, for purposes of this motion to dismiss, the court finds plaintiff's allegations to be sufficient regarding her lack of knowledge that others, outside of her race and/or age group, were hired for the positions for which she applied. While defendant may raise this issue again after relevant discovery has been taken, at this time, the court finds that equitable tolling may apply to the 45-day requirement to contact an EEO counselor regarding plaintiff's "failure to promote" claims, and thus, defendant's motion to dismiss is DENIED as to the first and third causes of action.

2. Hostile work environment claims

As mentioned above, plaintiff asserts two causes of action under Title VII for hostile work environment: the second cause of action, which purports to be based on race and gender-related harassment, and the fifth cause of action, which purports to be based on race-related harassment.

As an initial matter, to the extent that the second cause of action is based on race-related harassment, it appears to be duplicative of the fifth cause of action. However, because plaintiff alleges different conduct as part of each claim, the court will address each

5

claim separately.

Plaintiff's second cause of action is based on two sets of allegations. First, in April 2004, her charge nurse (Ed Kramer) "repeatedly, on different occasions" called plaintiff "Mama Chika, Chika Lu-Lu, Nigerian woman, baby maker. It is either you take your job seriously or you stay at home with your children. You don't have to work here." Plaintiff further alleges that, on one occasion, Kramer "actually followed plaintiff and shooed her off the locked psychiatric unit with a clipboard." Second, plaintiff alleges that, in May 2004, her supervisor (Ellen Peterson) sent a letter to the Human Resources manager advising her not to offer plaintiff a permanent position, and that Peterson ultimately offered a permanent position to one of her own personal friends.

Plaintiff's fifth cause of action re-alleges the comment made by Ed Kramer, and makes a number of additional allegations. First, plaintiff alleges that, in December 2009, she was "on her two knees begging Peterson to assist her with nurse practitioner credentialing clinical hours," and that "Peterson got mad and pointed her index finger at the plaintiff, [and] told her to stop going from one nurse manager to the other asking for nurse practitioner job."

Plaintiff then alleges that, in September 2011, she met with the chief of nursing to discuss her difficulties in obtaining a nurse practitioner position. Plaintiff alleges that Peterson requested meeting time with the chief to discuss "a more important issue," and after that request was denied, Peterson "turned around and stared at plaintiff and said to her 'You better keep your meeting brief, the chief does not have enough time for her managers.'"

Finally, plaintiff alleges that her supervisor (Lincoln Warner, who succeeded Peterson) "called plaintiff at her home to harass her by telling plaintiff not to report for her scheduled duties" on three instances between March 2012 and September 2013, and "did not pay plaintiff for most of the cancelled shifts." Plaintiff also alleges that Warner "called plaintiff at her home phone, woke her up from sleep after her night shift duties, and told her 'effective today you are detailed to another department for further notice, and your shift is

changed from night to day until further notice, or you will be disciplined.'"

In a separate section of the FAC, plaintiff also alleges that "nude female photos were posted at [her] work station at the beginning of her midnight shift." See FAC at 3. While plaintiff does not include this allegation as part of either hostile work environment claim, the court will consider it as part of the gender harassment claim. However, the court notes that plaintiff does not allege when this incident occurred, and the reference to the photos being posted "at the beginning of her midnight shift" suggest that this incident was not repeated.

Defendant first seeks dismissal of plaintiff's hostile work environment claims based on her failure to contact an EEO counselor within 45 days of the alleged conduct. Defendant notes that all of the conduct alleged in connection with the hostile work environment claims occurred more than 45 days before plaintiff first contacted an EEO counselor on February 16, 2012.

As with her "failure to promote" claims, plaintiff argues that equitable tolling should apply, because she was unaware of the 45-day requirement. However, for the same reasons set forth above, the court finds that plaintiff had constructive knowledge of the 45-day requirement, and thus, it cannot be tolled on that basis. Also, while the court found that the "failure to promote" claims might be subject to tolling based on plaintiff's lack of knowledge regarding the non-promotions, that reasoning would not apply to the hostile work environment claims, because plaintiff was necessarily aware of all of the relevant conduct. Thus, the court finds no basis for equitable tolling in the context of her hostile work environment claims, and GRANTS defendant's motion to dismiss as to the second and fifth causes of action. Because these claims cannot be saved by amendment, plaintiff will not be granted leave to amend these claims.

As an alternative basis for dismissal, defendant argues that neither the second nor the fifth cause of action sufficiently state a claim. Under Title VII, to prove that a hostile environment based on race existed, the plaintiff must show (1) that she was subjected to verbal or physical conduct because of her race; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her

employment and create an abusive work environment.  Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).  Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment.  See Faragher v. Boca Raton, 524 U.S. 775, 786-87 & n.1 (1998).

      The court finds that the majority of the conduct alleged by plaintiff (specifically, the conduct involving Peterson and Warner) appears to be race-neutral and gender-neutral, and thus, does not constitute "verbal or physical conduct based on her race" (or her gender).  And while the 2004 comment made by Kramer unquestionably constitutes unwelcome verbal conduct based on plaintiff's race and gender, a single incident can only support a hostile work environment claim when that incident is "extremely severe," and usually must involve physical conduct.  Brooks v. City of San Mateo, 229 F.3d 917, 926 (9th Cir. 2000).  While plaintiff alleges that Kramer made the comment "repeatedly, on different occasions," that allegation is not supported by any further factual details, and the court notes that the original complaint alleged that Kramer made the comment once, in April 2004.  See Dkt. 1 at 6.  Thus, while the comment made by Kramer was unquestionably offensive, the court finds that it, standing alone, cannot support a hostile work environment claim.

      Even if the court were to assume that all of the alleged conduct was based on plaintiff's race and/or gender, the sporadic nature of these incidents preclude a finding that they were severe or pervasive enough to alter the conditions of employment.  See, e.g., Manatt v. Bank of America, NA, 339 F.3d 792, 795-99 (9th Cir. 2003) (co-workers' use of the term "China-man," ridicule of the plaintiff's mispronunciation of English words, statement that "I've had the worst kind of trouble with your countrymen," using gestures mocking the appearance of Asians – held to be insufficient to create a hostile work environment).

      Accordingly, the court finds that the second and fifth causes of action fail to state a claim for hostile work environment based on race and/or gender, which provides an independent basis for granting defendant's motion to dismiss as to those claims.

### 3.  Retaliation claim

Plaintiff's fourth cause of action alleges that she engaged in protected activity when she filed a complaint with her union over a five-day suspension by Warner.  The FAC alleges that, on November 21, 2011, a patient had a "flare up of his PTSD," and complained to the nursing supervisor that "he was angry for a couple of things about the psychiatric unit."  Warner assumed that the complaint was about plaintiff, so he suspended her for five days.  Plaintiff filed a complaint with the union on January 29, 2012, and on February 6, 2012, Warner rescinded the five-day suspension and made it a ten-day suspension.  Plaintiff further alleges that Warner based the suspension on plaintiff having "abandoned the nursing station to use the other work station on the unit," even though Warner "did not [similarly] treat other white co-workers who used the conference room as an alternative work station."

Defendant argues that, in order to be actionable under Title VII, plaintiff must allege more than just that the retaliation was unfair, she must allege that it was based on activity specifically protected by Title VII.  Defendant argues that the FAC shows that plaintiff believed that the suspension was based on Warner having "improperly attributed fault to plaintiff for a patient's complaint," which falls outside the scope of Title VII.

However, plaintiff's EEO complaint suggests otherwise.  In it, she alleges that the ten-day suspension was based on "[un]founded charges for speaking up to the union and to management about her hostile work environment."  See Dkt. 27, Ex. A at 10.  While the FAC may be inartfully pled, as it does not make clear whether plaintiff believes that the initial five-day suspension, or the later ten-day suspension – or both – was imposed in retaliation for her complaints about hostile work environment, but given this circuit's rule of liberal construction of pleadings submitted by pro se litigants, the court finds that plaintiff has sufficiently stated a claim for retaliation under Title VII.  Accordingly, defendant's motion to dismiss is DENIED as to the fourth cause of action.

C. Conclusion

For the foregoing reasons, defendant's motion is GRANTED as to the second and

fifth causes of action, and DENIED as to the first, third, and fourth causes of action. The dismissal of the second and fifth causes of action is without leave to amend. Defendant shall have 21 days from the date of this order to file an answer to the FAC.

**IT IS SO ORDERED.**

Dated: April 15, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge